Syllabus.

# Richmond.

## JULIA A. OAKES, ET ALS., V. CHRISTINE ANN DICKERSON, ET AL.

### February 26, 1925.

1. WILLS—*Devises—Ascertaining Boundaries of Devises—Intent of Testatrix Ascertained by the Language of the Will.*—In determining the intent of a testatrix as to the boundaries of several tracts of land devised by her, what was intended must be ascertained primarily by the language of the will itself, and this language, construed in the light of the circumstances surrounding the testatrix at the time she made the will, is far more potent to show her intention than any expression casually used by the testatrix in the years before her death.

2. WILLS—*Ascertaining Boundaries of Devises—Case at Bar.*—In the instant case it was manifest from the will itself that the testatrix contemplated the necessity of a partition of a tract of land between the beneficiaries, and that she left this partition to be made in some usual method of dividing landed property. By failure to designate in her will the boundaries of the tracts the devisees were to take, she knew that a determination of those boundaries would be essential in order to fix the title in the devisees respectively.

3. REFERENCE—*Wills—Division of a Tract of Land—Case at Bar.*—A testatrix by her will provided that a tract of land should be divided in certain portions between three of her children, but failed to designate the boundaries of the tracts devised. The lower court appointed commissioners to go upon the land with a copy of the will to ascertain what lines constituted the proper line of division.

    *Held:* That while the Supreme Court of Appeals could not approve the procedure, yet the division finally adopted by the lower court was in conformity with the terms of the will, and in consonance with the intention of the testatrix.

4. REFERENCE—*Wills—Division of a Tract of Land—Case at Bar.*—Where a testatrix devised a tract of land in three parcels to three of her children, the determination of the meaning of the will of the testatrix was a judicial function and the ascertainment of testatrix's intention, whether by construction entirely from the language of the instrument itself, or with the aid of parol testimony, and a division in con-

formity therewith, should not have been referred to commissioners. The court by its decree should have found, and stated upon a hearing of the case, what was the intention of the testatrix, and how it could best be put into effect, and it might then have directed a surveyor to make a plat in partition accordingly for its approval, or have appointed a special commissioner to execute the decree of the court.

Appeal from a decree of the Circuit Court of Prince Edward county. Decree for complainant. Defendants appeal.

*Affirmed.*

The opinion states the case.

*J. Taylor Thompson*, for the appellants.

*Watkins & Brock*, for the appellees.

CRUMP, P., delivered the opinion of the court.

By the will of Mrs. Sarah A. Oakes she devised a tract of land, containing 133 acres, in three several parcels, to three of her children, as follows:

"Second, I give and bequeath to Julia A. Oakes, wife of my son John S. Oakes, and their children, sixty (60) acres of the Woodall tract of land south of spring, said tract adjoining Frank Carter on the east and R. C. Oakes estate on south, this tract contains the house in which they now reside.   Spring to be on line that they may use of same also an outlet to public highway at or near M. C. Mickle's.

"Third, I give and bequeath to my son C. P. Oakes (33) thirty-three acres of the Woodall tract of land containing house and orchard, also use of spring.

"Fourth, I give and bequeath to my daughter Christie Anne Dickerson, wife of A. L. Dickerson, (40) forty acres of the Woodall tract joining J. A. Oakes on the west."

John S. Oakes and his family had been living for some years in the residence on the land south of the spring, and C. P. Oakes had been living in the residence on the land north of the spring, referred to in the will as the "home and orchard." The testatrix, a widow, made her residence chiefly with the family of her son, C. P. Oakes, spending much time, however, with her other son and his wife, Julia.

The exact date of testatrix's death does not appear, but it was evidently a short time prior to the probate of her will which took place on the 10th day of January, 1919.

The devisees mentioned in the will being unable to agree upon a partition of the total area of 133 acres, so as to assign each of the three tracts of the number of acres mentioned in the will, in severalty, a suit in equity was instituted by Christine Ann Dickerson, to whom forty acres were given, to have the three tracts located and laid off by metes and bounds, the other devisees being made defendants.

Upon the maturing of the cause on the bill and answers the trial court appointed five commissioners with authority to any three to act. The decree directed the commissioners to "go upon the premises in the bill and proceedings mentioned, and take with them a copy of the will of Sarah Oakes, and the said commissioners are directed to ascertain what lines in their opinion constitute the proper lines of division of the real estate in the said last will, etc.; and the said special commissioners are further directed to call upon some competent civil engineer to make survey and plat of the lands in accordance with the lines of division so determined upon by them."

These commissioners made two reports, one signed by four of them, to which the appellee, Mrs. Dickerson, ex-

cepted, and the other signed by one commissioner, to which the appellants here excepted. The court then by a further decree rejected both reports and again appointed five commissioners to locate the tracts and make report. Under this second decree two reports were returned, each report being signed by one commissioner only, the two reports differing as had been the case with the first set of commissioners. By a decree then entered the court recited that it appeared from the reports made that the two commissioners making them could not agree upon a division of the land and the other commissioners had failed to sign either report, and the court set aside the appointment of these five commissioners, and again appointed five commissioners. One of these last commissioners did not act, but the other four united in and signed a report which was excepted to by the appellants. The court, however, overruled the exceptions and entered a final decree confirming the report, expressing the opinion that it correctly carries out the provisions of the will of Sarah A. Oakes, and fixing the location and boundaries of the three several parcels of land accordingly. The appellants assign as error that the final location of the three tracts is contrary to the true meaning and intention of the will of the testatrix.

The division of the whole tract devised reported by the final commissioners and approved by the court is as follows:

The division for which the appellants contend appears upon the following plat:

These two plats represent the division of the land for which the appellants, on the one hand, and Mrs. Dick-

erson, on the other, had been contending before the suit was brought.

The testimony of John S. Oakes, Mrs. Julia Oakes, and C. P. Oakes was taken on behalf of the defendants, the appellants here.

The boundaries of the tracts on each of the two plats correspond sufficiently in a general way with the boundaries in the will so far as they are indicated in that instrument.

It appears from the testimony that on the plat approved by the court some of the arable land theretofore cultivated by Mrs. Julia Oakes would be allotted to C. P. Oakes as it lay north of the straight line running west to east through the spring, and that Mrs. Oakes' sixty acres being extended over to J. S. Oakes line would embrace next to that line a goodly portion of wooded land. It is further shown that by the other plat, carrying the northern line of Mrs. Oakes' sixty acres obliquely westwardly to within 249 feet of C. P. Oakes' western line, C. P. Oakes would lose several acres of arable land theretofore cultivated by him, and the eastern line of Mrs. Dickerson's forty acres would be advanced so far west as to take in beyond the wooded land some of the arable land before that time in the possession and cultivated by the other parties. And it is contended by the appellants that the testatrix intended that C. P. Oakes and Mrs. Julia Oakes should remain in possession of the arable land cultivated by them respectively for many years and that only the wooded land adjoining James A. Oakes should go to Mrs. Dickerson, who lived several miles distant from the 133 acre tract. It is apparent, however, that a division of the property into three tracts of the number of acres to be contained in each, and which at the same time would carry out this suggestion with any degree of exactness, is impracticable.

[1] What the testatrix intended must be ascertained primarily by the language of the will itself, and this language, construed in the light of the circumstances surrounding the testatrix at the time she made the will, is far more potent to show her intention than any expressions casually used by the testatrix in the years following before her death.

The will was executed on the 12th day of August, 1912, during the life of the husband, and just preceding the three clauses above transcribed containing the devises in question, the first clause is as follows:

"First, It is my will that my estate be kept together for the benefit of my husband, S. P. Oakes, during his life, should he survive me—after his death the following distribution is to be made."

[2] After the death of the husband no change in the will was made. It is manifest from the will itself that the testatrix contemplated the necessity of a partition of the 133 acres of land into three tracts of the stated number of acres, and that she left this partition to be made in some usual method of dividing 'anded property. Her manifested desire was that each of her sons, that is, C. P. Oakes and J. S. Oakes' wife, should have a homestead and the surrounding land of the number of acres for each one stated in the will, and that a division should so be made as to give both families access to the spring. By failure to designate in her will the boundaries of the tracts the devisees were to take, she knew that a determination of those boundaries would be essential in order to fix the title in the devisees respectively.

[3, 4] The court below seems to have made earnest efforts to have the tracts fairly located and laid out in severalty. The court, however, cannot approve the procedure to which resort was had in this case, in the en-

deavor to ascertain and carry out the intention expressed in the will. The determination of the meaning of the will of the testatrix was a judicial function, and the ascertainment of testatrix's intention, whether by construction entirely from the language of the instrument itself or with the aid of parol testimony, and of a division in conformity therewith, should not have been referred to commissioners. The court, by its decree, should have found and stated upon a hearing of the case what was the intention of the testatrix and how it could best be put into effect, and it might then have directed a surveyor to make a plat in partition accordingly for its approval, or have appointed a special commissioner to execute the decree of the court. Yet we are of opinion that the division finally adopted by the court, based upon the straight line east and west through the spring is in conformity with the terms of the will and in consonance with the intention of the testatrix.

The main desire of the testatrix is carried out in the division approved by the court below, and we perceive no error in its decree. The lower court's decree is therefore affirmed.

*Affirmed.*